## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**TERRY WEAVER,**
           **Plaintiff,**

     v.                                                    Case No. 12-CV-00234

**TONY MICHAEL RIGGS,**
           **Defendant.**

---

## DECISION AND ORDER

In this diversity action, plaintiff Terry Weaver sues defendant Tony Michael Riggs for breach of contract. Both parties move for summary judgment.

The relevant facts are as follows: On July 25, 2003, plaintiff entered into a loan purchase agreement ("LPA") with Hook Up Drivers, Inc. ("Hook Up"), a corporation owned by defendant. Hook Up was a commercial truck driving school, and plaintiff paid $200,000 from his private savings to purchase a bundle of loans Hook Up had issued to its students. The LPA was negotiated by plaintiff's son-in-law, Randall Letcavage, who worked with a company called I-Capital Finance Inc. ("I-Capital"). Plaintiff claims he was unable to collect on any of the loans and lost all of his money.

In mid-2005, Letcavage called defendant complaining about plaintiff's inability to collect on the loans. Defendant said he did not believe he had any liability to plaintiff but agreed to renegotiate the parties' agreement. On December 9, 2005, defendant, plaintiff and I-Capital entered into an agreement (the "Agreement") under which plaintiff and I-Capital agreed to release any claims they might have against defendant in connection with the LPA in exchange for defendant's promise to pay plaintiff $230,000. There was,

however, a contingency. The Agreement stated that defendant was only required to pay plaintiff if defendant was able to buy-out JHT Holdings, Inc. ("JHT"). Defendant was the CEO of JHT at the time and owned a small amount of JHT stock but wanted to become the owner of the company. Defendant states that Letcavage had promised to help procure the financing needed for the buy-out, and the contingency provision was included in the Agreement to give Letcavage an incentive to follow through on that promise. The Agreement describes the contingency in two places. Paragraph 1 provides:

> In exchange, Riggs agrees to pay the sum of $230,000, which will only become due and payable as a transaction fee ("Buy-Out Fee") related to Riggs's potential buy-out of [JHT] at some future date ("Buy-Out") as hereinafter set forth, and specifically defined as a buyout [sic] where Riggs and his designated management team members together control a minimum of 51% of the resulting common stock of JHT after this Buy-Out.

(Aff. Victor Plantinga, Ex. C, Agreement ¶ 1, ECF No. 29-1.) And Paragraph 2 states:

> The parties all agree Riggs will pay the Buy-Out fee only to Weaver directly, in the sum of $230,000, which shall be due and payable only upon the Buy-Out (sale of JHT resulting in 51% ownership of the JHT common stock by Riggs and designated management team members after the Buy-Out).

(*Id.* ¶ 2) Both parties agree that the "designated management team members" referred to in the Agreement are all of the other members of the JHT management team.

On July 20, 2006, a group of outside institutional investors, who were not associated with any of the individual members of JHT's management team, formed JHT Acquisition Corp. ("JHT Acquisition") for the sole purpose of buying out JHT. JHT Acquisition then acquired 100% of JHT's common stock, which was the only outstanding security issued by JHT. The members of JHT's management team were given an opportunity to participate in the buy-out by purchasing some of JHT Acquisition's stock, but they only became minority shareholders. The majority of JHT Acquisition's stock was owned by the

institutional investors, and, after the buyout, they controlled both JHT Acquisition and JHT. Plaintiff claims the buy-out satisfied the contingency in the Agreement. Defendant disagrees.

Summary judgment is appropriate when "there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that Wisconsin law governs their contract. Under Wisconsin law, the interpretation of an unambiguous contract presents a question of law. *Town Bank v. City Real Estate Development, LLC*, 330 Wis. 2d 340, 355–56 (2010). A contract is ambiguous if the language contained therein, when given its plain and ordinary meaning, is susceptible to more than one reasonable interpretation. *Id.*; *see also Seitzinger v. Comm. Health Network*, 270 Wis. 2d 1, 15 (2004) (noting that language in a contract should be "interpreted consistent with what a reasonable person would understand the words to mean under the circumstances").

The parties agree that the contract is unambiguous, and I conclude that defendant is entitled to summary judgment. The Agreement required defendant to pay plaintiff $230,000 in the event that the JHT management team was able to buy or gain control over 51% of JHT's common stock.[1] The undisputed facts show that this contingency never occurred. Following the July 2006 buy-out, JHT Acquisition owned all of JHT's common

---

[1] There is a potential ambiguity in the Agreement because Paragraph 1 says the management team must "control" 51% of JHT's common stock, while Paragraph 2 says the management team must have "ownership" of 51% of JHT's common stock. (Agreement ¶¶ 1–2.) However, this inconsistency makes no difference in this case because it is clear that the management team neither owned nor controlled JHT's stock after the buy-out.

stock, and the institutional investors who orchestrated the buy-out controlled all of that stock because they controlled JHT Acquisition.

Plaintiff makes a creative argument in an effort to avoid this result. He argues that the stock referred to in the Agreement is the stock of JHT Acquisition and not JHT, and he claims the contingency in the Agreement was satisfied because after the buy-out JHT's management team owned more than 51% of the common stock of JHT Acquisition. He concedes that the management team owned only a small percentage of JHT Acquisition's stock but points out that the company classified most of its stock as "preferred" stock. He maintains that the only stock that is relevant is the stock the company classified as "common" stock.

It is not clear from the record whether JHT's management team actually owned more than 51% of the common stock of JHT Acquisition after the buy-out. The classification of shares of stock as common versus preferred presents a complicated question, and the label the company chose to give to each share of its stock is not necessarily dispositive. But, even assuming that they did, plaintiff's argument fails because the Agreement clearly refers to the stock issued by JHT itself and not to the stock issued by JHT Acquisition. The Agreement describes the stock as "the resulting common stock of JHT" and "the JHT common stock," and it defines "JHT" as "JHT Holdings, Inc." (Agreement, Recital B, ¶¶ 1–2.)

Plaintiff argues that the relevant stock is JHT Acquisition's stock because JHT Acquisition was formed for the sole purpose of acquiring all of JHT's stock. Thus, JHT and JHT Acquisition were effectively the same entity. Plaintiff does not offer any legal authority to support this assertion. Therefore, I reject it. JHT was a wholly-owned subsidiary of JHT

4

Acquisition, but even a wholly owned subsidiary is presumed to be a separate and distinct entity from its parent corporation. 1 William Meade Fletcher, et al., Fletcher Cyclopedia of the Law of Private Corporations § 26 (perm. ed., rev. vol. 2006). Plaintiff also argues that the Agreement refers to the stock of JHT Acquisition because the Agreement describes the stock as "the *resulting* common stock" after the buy-out, and the stock issued as a result of the buy-out was the stock of JHT Acquisition. Plaintiff, however, ignores the next two words in the sentence, which are "of JHT." He also ignores the next paragraph, which describes the stock as "the JHT common stock."

Since the July 2006 buy-out did not meet the requirements set out in the Agreement, I conclude that the buy-out did not trigger defendant's duty to pay plaintiff under the Agreement.

**THEREFORE, IT IS ORDERED** that plaintiff's motion for summary judgment (Docket #21) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Docket #24) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 19th day of February, 2014.

                                                                                                          s/ Lynn Adelman
                                                                                                          _____
                                                                                                          LYNN ADELMAN
                                                                                                         District Judge